UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAUREAN PROCH, individually and
on behalf of a class of similarly
situated persons,

          Plaintiff,

vs.

SHERIFF MAT KING,
LIEUTENANT RICHARD OLEJNIK,
LIEUTENANT KYLE ADAMS,
ST. CLAIR COUNTY, MICHIGAN and
SECURUS TECHNOLOGIES, INC.,

          Defendants.

Case No. 22-12141

Hon. Laurie J. Michelson
Magistrate Judge:
Hon. Patricia T. Morris

_____

IAN T. CROSS (P83367)
Margolis & Cross
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
ian@lawinannarbor.com

TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendants King, Olejnik,
Adams and St. Clair County, only
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

SHELBY LEIGHTON
JACQUELINE ARANDA OSORNO
Public Justice
Counsel for Plaintiff
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 221-8495
sleighton@publicjustice.net
jaosorno@publicjustice.net

COLLEEN SMERYAGE
Freedman Normand Friedland and LLP
Attorney for Defendant Securus
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(305) 924-2900 / Fax (646) 392-8842
csmeryage@fnf.law

RHONDA R. STOWERS (P64083)
Plunkett Cooney
Attorney for Defendant Securus
111 E. Court Street, Suite 1B
Flint, MI 48502
(810) 342-7014
rstowers@plunkettcooney.com
_____

## DEFENDANTS KING, OLEJNIK, ADAMS AND ST. CLAIR COUNTY'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendants King, Olejnik, Adams and St. Clair County by and through their attorneys, Fletcher Fealko Shoudy & Francis, P.C., and hereby move this Court for summary judgment pursuant to Fed R. Civ. P. 56 for the reasons stated in the accompanying Brief.

The undersigned counsel certifies that counsel communicated in writing with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
By:  / Todd J. Shoudy
Attorney for Defendant
1411 Third Street Suite F
Port Huron, Michigan 48060
(810) 987-8444
Michigan Bar #41895
DATED:  March 7, 2025          tshoudy@fletcherfealko.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAUREAN PROCH, individually and
on behalf of a class of similarly
situated persons,

         Plaintiff,

vs.

SHERIFF MAT KING,
LIEUTENANT RICHARD OLEJNIK,
LIEUTENANT KYLE ADAMS,
ST. CLAIR COUNTY, MICHIGAN and
SECURUS TECHNOLOGIES, INC.,

         Defendants.

Case No. 22-12141

Hon. Laurie J. Michelson
Magistrate Judge:
Hon. Patricia T. Morris

_____

IAN T. CROSS (P83367)
Margolis & Cross
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
ian@lawinannarbor.com


TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendants King, Olejnik,
Adams and St. Clair County, only
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

SHELBY LEIGHTON
JACQUELINE ARANDA OSORNO
Public Justice
Counsel for Plaintiff
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 221-8495
sleighton@publicjustice.net
jaosorno@publicjustice.net


COLLEEN SMERYAGE
Freedman Normand Friedland and LLP
Attorney for Defendant Securus
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(305) 924-2900 / Fax (646) 392-8842
csmeryage@fnf.law

RHONDA R. STOWERS (P64083)
Plunkett Cooney
Attorney for Defendant Securus
111 E. Court Street, Suite 1B
Flint, MI 48502
(810) 342-7014
rstowers@plunkettcooney.com
_____

## DEFENDANTS KING, OLEJNIK, ADAMS AND ST. CLAIR COUNTY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

STATEMENT OF QUESTIONS PRESENTED ........................................................ ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iii

INDEX OF AUTHORITIES ................................................................................... iv

I.    INTRODUCTION ............................................................................................1

II.   THE UNDISPUTED FACTS .........................................................................2

III.  ARGUMENT ..................................................................................................11

    A.  The "postcard only" policy for incoming general mail does not violate the First Amendment ...................................................................................11

        1.  There is a 'valid, rational connection" between the jail mail policy and a legitimate penological objective ...........................................................14

        2.  The Remaining *Turner* Factors ............................................................16

    B.  Plaintiff's due process claim is meritless....................................................19

    C.  Plaintiff does not have a valid First Amendment retaliation claim.............23

    D.  Each individual defendant is entitled to qualified immunity .....................27

    E.  The Declaratory Relief Claim ....................................................................28

    F.  The Conspiracy Claim................................................................................29

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

**<u>Question No. 1:</u>**  Whether the Jail's postcard only policy for incoming regular mail is unconstitutional?

Defendants state the answer is:  No
Plaintiff states the answer is:     Yes

**<u>Question No. 2:</u>**  Whether Plaintiff has an actionable claim for a due process violation?

Defendants state the answer is:  No
Plaintiff states the answer is:     Yes

**<u>Question No. 3:</u>**  Whether Plaintiff has an actionable claim for a First Amendment retaliation?

Defendants state the answer is:  No
Plaintiff states the answer is:     Yes

**<u>Question No. 4:</u>**  Whether the individual Defendants are protected by qualified immunity?

Defendants state the answer is:  Yes
Plaintiff states the answer is:     No

**<u>Question No. 4:</u>**  Whether Plaintiff's claim for declaratory relief, like his claim for injunctive relief, is moot?

Defendants state the answer is:  Yes
Plaintiff states the answer is:     No

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Turner v Safley*, 482 U.S. 78, 95 (1987)

<u>**INDEX OF AUTHORITIES**</u>

**Cases**

*ACLU Fund of Mich. v. Livingston County*,
   796 F.3d 636 (6th Cir. 2015) ................................................................21

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ...........................................................................28

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ...........................................................................28

*Ashcroft v. Mattis*,
   431 U.S. 171 (1977) ...........................................................................28

*Berrada v. Cohen*,
   792 F. App'x 158 (3d Cir. 2019) ...........................................................25

*Bethel v. Jenkins*,
   988 F.3d 931 (6th Cir. 2021) ...............................................................13

*Blick v. Ann Arbor Pub. Sch. Dist.*,
   105 F.4th 868 (6th Cir. 2024) ....................................................... 20, 24

*Block v. Rutherford*,
   468 U.S. 576 (1984) ...................................................................... 14, 18

*Bratcher v. Clark*,
   770 F. App'x 105 (4th Cir. 2019) ..........................................................28

*Bratcher v. Clark*,
   No. 1:17-cv-474, 2018 U.S. Dist. LEXIS 166939, at *15 (E.D. Vir. 2018) ........22

*Dickson v. Credit Bureau of Greater Lansing*,
   No. 1:95-CV-169, 1996 U.S. Dist. LEXIS 9356, at **6-7 (W.D. Mich. June 14, 1996) ...............................................................................................25

*Fox v. Oosterum*,
   176 F.3d 342 (6th Cir. 1999) ...............................................................20

*Harbin-Bey v. Rutter*,
   420 F.3d 571 (6th Cir. 2005) ...............................................................27

*Holbrook v. Jellen*,
  No. 3:14-cv-00028, 2017 U.S. Dist. LEXIS 33890, at *61 (M.D. Pa. Mar. 8,
  2017) .................................................................................................................21

*Human Rights Def. Ctr. v. Union Cnty.*,
  111 F.4th 931 (8th Cir. 2024) ...........................................................................12

*Jackson v. Frank*,
  509 F.3d 389 (7th Cir. 2007) .............................................................................15

*Jackson v. Gill*,
  92 Fed. App'x 171 (6th Cir. 2004) ....................................................................27

*LaPine v. Savoie*,
  No. 2:14-cv-145, 2014 U.S. Dist. LEXIS 151924, at **39-40 (W.D. Mich. Oct.
  27, 2014) .............................................................................................................25

*Martin v. Kelley*,
  803 F.2d 236 (6th Cir. 1986) .............................................................................21

*Meeks v. Schofield*,
  625 Fed. App'x 697 (6th Cir. 2015) ..................................................................26

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978) .................................................................................... 19, 23

*Morrissey v. CCS Servs., PLLC*,
  No. 19-cv-13027, 2020 U.S. Dist. LEXIS 182949, at *8 (E.D. Mich. Oct. 2,
  2020) ...................................................................................................................25

*Nickarlos v. Kelley*,
  No. 5:18-CV-293-BSM-BD, 2021 U.S. Dist. LEXIS 92355, at *19 (E.D. Ark.
  Apr. 22, 2021) ....................................................................................................22

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ...........................................................................................24

*Overton v. Bazzetta*,
  539 U.S. 126 (2003) ................................................................................ 16, 17, 19

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ........................................................................28

*Pesci v. Budz*,
    935 F.3d 1159 (11th Cir. 2019) .......................................................14

*Reynolds v. D.L. Young*,
    No. 5:20-cv-00753, 2023 U.S. Dist. LEXIS 55176, at *12-13 (S.D. W. Va. Mar.
    30, 2023) ..........................................................................................22

*Sheets v. Moore*,
    97 F.3d 164 (6th Cir. 1996) ...........................................................13

*Simpson v. City of Cape Girardeau*,
    879 F.3d 273 (8th Cir. 2018) ................................................ 12, 14, 15

*Small v. Brock*,
    963 F.3d 539, 543 n.2 (6th Cir. 2020) .............................................28

*Smith v. Maschner*,
    899 F.2d 940 (10th Cir. 1990) .........................................................20

*Smith v. Yarrow*,
    78 Fed. App'x 529 (6th Cir. 2003) ..................................................26

*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999)(en banc) ............................................24

*Thomas v. Clear*,
    No. 7:20-cv-00584, 2021 U.S. Dist. LEXIS 178725, at **23-24 (W.D. Va. Sept.
    20, 2021) ..........................................................................................23

*Thornburgh v. Abbott*,
    490 U.S. 401, 408 (1989) ...............................................................13

*Turner v Safley*,
    482 U.S. 78 (1987) .......................................... 1, 8, 13, 14, 15, 16, 17

*Turner v. Scott*,
    119 F.3d 425 (6th Cir. 1997) ...........................................................27

vi

*Walker v. Calderon*,
   No. C95-2770 FM, 1997 U.S. Dist. LEXIS 24802, at \*\*13-14 (N.D. Cal. Oct.
   31, 1997) ......................................................................................................22

*Witzke v. Bouchard*,
   No. 22-13070, 2023 U.S. Dist. LEXIS 101081, at \*\*23-24 (E.D. Mich. June 9,
   2023) ..........................................................................................................22

**Statutes**

MCL 769.28 ...............................................................................................................2
MCL 801.83 .............................................................................................................10
MCL 801.83(1) ........................................................................................................24

**Constitutional Provisions**

MI Const. Art. VII, Sec. 2 ........................................................................................2
MI Const. Art. VII, Sec. 4,6 .....................................................................................2

## I.   **INTRODUCTION**

Plaintiff Taureen Proch, who was then an inmate at the St. Clair County Jail, and now is a former inmate, filed the present lawsuit, in pro per, on September 9, 2022 against St. Clair County Sheriff Mat King; St. Clair County corrections officers Sergeant Donald Fleming, Lieutenant Richard Olejnik, and Lieutenant Kyle Adams; and Securus Technologies, Inc., the telephone and technology provider for the jail (ECF No. 1), over the jail's "postcard only" mail policy for regular incoming mail and alleged first amendment retaliation.   An amended complaint was filed on April 12, 2024, which dropped Defendant Fleming but added St. Clair County and seeks injunctive and declaratory relief against the individual defendants in their "official capacity" and "monetary relief" in their individual capacity (ECF No. 82, PageID.755-756).

Discovery, now being closed, Defendants move for summary judgment pursuant to FRCP 56.   As set forth below, Defendants "postcard only" policy for regular mail, as this court already intimated, easily satisfies the *Turner v. Safely* factors (ECF No. 37, PageID.274-281); Plaintiff cannot maintain a due process claim based upon a single rejected piece of mail and, regardless, the jail policy provides the requisite due process for inmates; the First Amendment retaliation claim is baseless; Plaintiff cannot establish that any of the claims against the

1

individual defendants are not protected by qualified immunity; and his claim for declaratory relief is moot[1].  Finally, there is no evidence of conspiracy.

## II.    THE UNDISPUTED FACTS

1. Plaintiff was an inmate in the St. Clair County jail from May 31, 2022 through January 13, 2023, while serving a one year jail sentence (Pl. dep., pp. 19-22, attached as Ex. 1; Affidavit of Lt. Richard Olejnik attached as Ex. 2, ¶¶4-5). With the aid of jail personnel, he was able to apply for and receive a 25% reduction in his sentence, meaning that along with good time credit his sentence was completed on January 13, 2023 (see Pl. dep., pp. 20-22).  He has not returned.

2. Running a County Jail is part of the responsibilities of the elected County Sheriff, a position created under the Michigan Constitution, and not part of the responsibilities of the County (MI Const. Art. VII, Sec. 4,6; MCL 801.1).  The jail houses inmates who are sentenced for a maximum period of 1 year or less (MCL 769.28)[2].  Like other elected county offices, such as the prosecuting attorney, the Sheriff (and thus the Jail) is 100% reliant upon the County Board of Commissioners—which has the power to levy property taxes (MI Const. Art. VII, Sec. 2)—for its funding (King dep., pp. 38-39, 44-45; attached as Ex. 3).  The County handles all revenues and expenditures for the Sheriff's office, including jail

---

[1] This Court already dismissed the claim for injunctive relief (see ECF No. 55 and 63), and struck Counts V and VI alleging a violation of the Michigan Constitution (ECF No. 81, PageID.749)

[2] The Jail also houses MDOC detainees, ICE custody and others in federal custody.

operations; the jail is not a funding arm of the County (King dep., pp. 38-39, 41, 44).

3. Defendant Sheriff Mat King was elected in November 2020 to the position of Sheriff after years as a road patrol Deputy (King dep., p. 15-17). The day-to-day operations of the jail are handled by two jail lieutenants, Defendants Lts. Adams and Olejnik (King dep., p. 17; Olejnik dep., pp. 38-39; attached as Ex. 4).

4. Defendant Securus is the telephone and technology provider for inmate services, including telephones, video visitation, and electronic tablets for inmates, which allows inmates to communicate with jail and medical staff, file grievances, access the law library and jail handbook, order commissary, and other free services at no cost (Pl. dep., pp. 56-57; Olejnik dep., pp. 269-270; Ex. 5, pp. 31-32). Inmates can also access paid services such as electronic messaging with individuals outside of the jail and movie and music rentals (Id). The tablet system went live in January 2022 with inmates being allowed to rent their own personal tablet for $5 per month and free community tablets available for the rest of inmates to share (Ex. 14, pp. 2-5; Pl. dep., pp. 52, 54-55). Effective October 2023, the Sheriff approved an expansion of the use of tablets so that all inmates would have their own assigned tablet during their jail stay free of charge (King dep., pp. 68-69, 76; Ex. 27). In 2024, the contract was amended again to allow inmates to exchange text messages with individuals outside of the jail for a small fee (Ex. 5, pp. 2-5). For each of these paid services, as is customary in the jail industry, the

3

revenue from the paid services was shared per the contract with the County (Ex. 5, p. 15-16).  The County Board of Commissioners required that all revenue obtained from Securus services be used for the betterment of the inmates (see Board Resolution, attached as Ex. 6).

5.  On July 15, 2022, the Jail implemented a new jail mail policy effective August 1, 2022 (see 7/15/22 email and attached Policy 10.4 attached as Ex. 7; Olejnik dep., pp. 85-87).  The only significant change to the policy was the portion of the policy that restricted incoming regular general mail from outside of the jail to a "postcard only" (Id at 155).  Significantly, those outside of the jail can still send "special correspondence", including legal mail, books, and periodicals, in the same format they could before the August 1, 2022 change (Ex. 7, p. 6; Pl. dep., p. 97), and the postcard restriction does not apply to outgoing mail (Ex. 7, p. 4; see also Pl. dep., p. 96).  For outgoing mail, qualified indigent inmates can receive stamps and postage from the jail commissary for free (see Indigent Policy attached as Ex 8).

6.  The main goal for restricting general incoming mail to postcards only was to reduce the risk of contraband, primarily illicit substances, from entering the jail (see Olejnik Affidavit, ¶7; Olejnik dep., pp. 88-89).  Postcard only policies are used at numerous jails throughout the United States and are a recognized jail strategy for limiting the introduction of contraband into the jail (Sweeney dep, pp. 92, 121-122, 155-162, attached as Ex. 9; see also Ex. 26, p. 13). The policy was

drafted by the Jail Lieutenants and ultimately approved by the Sheriff (King dep., p. 46-47). From the Sheriff's perspective, he explained "with the uptick in drugs being more dangerous like Fentanyl, it made sense to have a policy that ensure the safety and security of our jail. Any time we can do something to lessen the amount of contraband coming into our jail, simultaneously cutting back on the amount of physical work with our limited staff, as long as it's not violating anybody's rights, I'm all for it" (King dep., pp. 46-47, 48-49).

7. Under the policy, a postcard is simply copied front and back, and the copies are given to the inmate and the original is discarded, which has 100% eliminated the possibility of drugs entering the jail through regular mail to inmates (Ex. 2, ¶7).

8. Contraband coming in through the mail is a well-known problem in the corrections industry (King dep., pp. 51-52; see NCJRS report attached as Ex. 10). In the period between January 2020 and the effective date of the policy, the Jail had numerous incidences of narcotics coming into the jail through regular mail, such as the paper soaked in drugs and drugs hidden in the fold of envelopes or elsewhere in the mail, which cannot happen with postcard form mail and the copy system used by the jail (see Sgt. Logs attached as Ex. 11; Ex. 2, ¶7; King dep., pp. 49-50; Olejnik dep, pp. 92-94, 105-106, 110-111, 248-249).

9. The jail had been considering adopting a postcard only policy for approximately two years. For example, on August 21, 2021, after the jail discovered that paper soaked in synthetic cannabinoids had entered through the

mail system, Lt. Olejnik referenced that the solution previously discussed was "to switch to postcards, make a photocopy, then provide that copy to the inmate" (see Ex. 12). However, in the interest of the inmates' ability to communicate with the outside world, he stated "[w]e discussed this last year, but decided to wait until the switch to Securus tablets were complete so there is plenty of opportunity for them to receive mail/photos via tablet" (Id).

10. The jail also considered purchasing an expensive mail scanner machine, which are not 100% effective and cost between $125,000 and $150,000, or using a third party to scan material and deliver an electronic copy of the mail but determined the postcard policy was the most practical without increasing costs and workload (see Ex. 12; Olejnik dep., pp. 94-95, 99-105, 119-123). It also takes less of a deputy's time to process a simple postcard (Olejnik Aff., ¶7).

11. The policy was implemented seven (7) months after the tablets were available. Neither the jail mail policy or inmate mail was ever discussed with Securus (Olejnik dep., pp. 284-287).

12. In addition to mail, inmates may communicate by telephone, emessages, text messages, or on-site or remote video visitation (King dep., pp. 70-72; Olejnik dep., pp. 257-260). Inmates are entitled to one free, on-site video visitation per week and may make an unlimited number of remote video visitations with individuals literally anywhere in the world (Olejnik dep., pp. 271-275).

13. The cost of telephone calls is regulated by the FCC at 21 cents per minute. The cost of sending an electronic message (an email, a group of up to 5 photos, an ecard, or a videogram) was one electronic stamp which costs only 50 cents per stamp plus a processing fee of $3 for each purchase of a "book" of 5, 10, 20 or 50 stamps (Pl. dep., pp. 58-60, 105). The costs of a text message were between 3 and 6 cents per text plus a service fee for a bulk purchase (see Ex. 13), and the cost of a remote video visit was $12.99 per 20 minute call (see Ex. 5, p. 8).

14. These electronic communications through the use of a tablet were a popular means of communicating between inmates and those outside of the jail, similar to the use of cell phones or tablets outside of the jail setting (see Ex. 14). Although Plaintiff claims that the policy was adopted as part of a conspiracy to force inmates to communicate through the emessaging system using a tablet or other paid options, there is no evidence produced in discovery to support that claim. Moreover, in the seven (7) months before the tablets were available, electronic stamps purchased averaged 15,640 per month, and in the sixth (6) months after the jail mail policy was implemented, the average dropped to 12,422 stamps per month; thus, there is no connection between a postcard only policy and a supposed increase in emessaging (see Ex. 14). In fact, none of the use of the pay features increased after the postcard policy was put into effect (Id).

15. During his jail stay, Plaintiff was a prolific user of both the phone system and the emessaging application on the tablet, as well as the pay and free features

on the tablet (see Olejnik Affidavit, ¶9; Pl. dep., pp. 45-46). As of November 30, 2022, he made 850 phone calls totaling 4,974.05 minutes, and by using the tablet received 17 video, 72 photographs, and sent and received numerous lengthy emails with his family/friends (Id; Pl. dep., pp. 46-52). Plaintiff also used the tablet to rent movies, play video games, and purchase subscriptions (Pl. dep., p. 60).

16. On August 11, 2022, Plaintiff filed a grievance over the mail policy claiming that it was "contrary to the Supreme Court's opinion within *Turner v. Safely*, 482 U.S. 78 (1987)."(Ex. 15, pp. 41-42). He was told by Lt. Adams in response to his grievance that his friends and family were not being prohibited from sending mail; the rule limited the physical form of the mail and "there are several means of communications available to all inmates to help facilitate the connection to friends and family. If an inmate receives mail in a form that is not allowed, the inmate in question will receive notification via a facility mail rule violation report stating such" (Id). Plaintiff requested a copy of the grievance and Lt. Olejnik supplied it to him (Id; Olejnik dep., p. 146).

17. Plaintiff also filed an additional 19 grievances over a variety of matters (see Ex. 15, pp. 2-40); Jail officials timely responded to all his grievances (Id). Although Plaintiff claims he was retaliated against for doing so, his only evidence of retaliatory motive is that he was told by Sgt. Branch (who is not one of the defendants in this case), words he cannot recall but something like "if you sort of play ball and don't say nothing or complain, then, you know, everything will be a

lot easier" (Pl. dep., pp. 91-93). Plaintiff acknowledged that he has no "concrete evidence" that Defendants Olejnik or Adams retaliated against him based upon the filing of the grievance over the jail mail policy (Pl. dep., pp. 122-123). Although the Complaint alleges that he was denied a copy of his grievances when he requested them, he was given a copy within a few days of his request (see Ex. 25).

18. According to Plaintiff, he was sent an envelope from an aunt while he was in jail that was returned to sender, but he refused to produce the contents of the envelope in discovery or make the original available for inspection (Pl. dep,. pp. 34-39; see also photo of envelope attached as Ex. 16). The envelope has a stamp of August 17, 2022 at the top, a handwriting of "RTS" and "REF" on the envelope, but the state and zip code are covered on the address line (Id). The jail has no record of such a letter being sent to the jail (Olejnik dep., pp. 171-177). The contents of the envelope only became known to Plaintiff after he was released from jail, and he never filed a grievance over the letter (Pl. dep., p. 79).

19. Under the jail's mail policy, when the jail receives regular mail directed to an inmate that violates the mail policy, the inmate is sent a mail rule violation notice (Olejnik Aff. ¶10; form attached as Ex. 17). An inmate who disagrees with that determination, as with any other jail issue, has the right to use the grievance system to challenge any rejection of mail (Olejnik dep., p. 167; Pl. dep., pp. 77, 79-80). Numerous individuals were given notices when a letter that was not in the form of a postcard was received, as that was the instruction to jail staff processing

mail (Samples attached as Ex. 18; see also those produced by Plaintiff attached as Ex. 19, Pl. dep., pp. 39-43, 73-74; Olejnik dep., pp. 157-159, 162-163, 169-172, 193-198). To the knowledge of the jail, no mail was destroyed (Id at p. 198).

20. Initially, when the jail rejected mail because it was not in the form of a postcard, the letter would either be returned to the sender or placed in the inmate's property locker if no return address was available (Olejnik dep., pp. 165-168). If mail was rejected, a sender would only receive a copy of the return letter (Id). In April 2023, the jail changed the mail policy to hold the letter and send a notice to the sender to give them a time period to appeal the rejection (see April 11, 2023 email attached as Ex. 20; Olejnik dep., pp. 159-161, 178-183).

21. After he filed the lawsuit, but while he was at the jail, Plaintiff requested that the names of the individual defendants he had sued agree to provide their first names (see Ex. 21). Lt. Olejnik referred him to the County's legal counsel (Id).

22. As permitted under MCL 801.83, the County bills all inmates for the cost of housing them at the rate of $60.00 per day and has done so for at least the past 20 years (Roy dep., pp. 19,32, 43-44, 88-89, attached as Ex. 22).

23. Like all inmates, Plaintiff was sent a bill on March 27, 2023 that included $13,680 for inmate housing given his length of stay (see Ex. 23, p. 2; Roy dep., pp. 55, 67). On April 10, 2023, Plaintiff sent a letter challenging the authority of the County to send a bill and directed that the County "stop all communication with me and this address about this debt" (Ex. 23, p. 1). On May 25, 2023, the jail

reimbursement clerk responded with the assistance of corporation counsel and pointed out that the debt owed was the result of a statutory obligation, that the County is not a creditor under the fair debt collection statutes, and that it had rights under the statute to collect the amount owed (Ex. 23, pp. 3-7; see also Roy dep., pp. 76-77, 92).

24. All inmates with an unpaid debt are sent three invoices, and if the debt is not paid within a 90-day period and no payment arrangement has been made, the lodging debt is sent to an outside collection agency to attempt to obtain payment (Roy dep., pp. 55-56, 58-59, 67-69).  On October 19, 2003, 69 past due accounts, including Plaintiff's account, were turned over to a contractor to collect, as per the normal, decades-long practice of the jail (see Ex. 23, pp. 9-10; Roy dep., pp. 68-70, 127).

### III.   ARGUMENT

#### A. The "postcard only" policy for incoming general mail does not violate the First Amendment

The constitutionality of the "postcard only" portion of the jail mail policy applicable only to incoming general mail that Plaintiff challenges in his lawsuit has been addressed by many decisions, with the vast majority concluding that a postcard only policy survives constitutional muster.  Several of these rulings were cited by this Court at length in the January 24, 2023 Report and Recommendation (ECF No. 37; PageID.272-276).  As this court recognized:

11

Over the last decade, a handful of district courts have analyzed "postcard-only" policies like the one implemented by the St. Clair County Jail. Defendants in these cases often assert security and operational efficiency as penological objectives for their policies, and there is little doubt that both of these objectives are legitimate. E.g., *Moon v. Jordan*, No. 1:15-CV-167, 2017 U.S. Dist. LEXIS 187012, 2017 WL 5466681, at *4 (E.D. Mo. Nov. 13, 2017); see *Human Rights Defense Center v. Johnson County Board of Commissioners,* 507 F. Supp. 3d 1277, 1287 (holding that efficiency is a legitimate penological interest). Indeed, postcard-only policy limits the opportunities to conceal contraband in mail by reducing the size of individual letters. *Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1149, 1153 (D. Ariz. 2009). Small, dangerous items like razors or narcotics may be hidden between pages, within envelopes, or between folds of paper. *Id*.; see also *Perkins v. Demeyo*, No. 2:12-cv-01242, 2014 U.S. Dist. LEXIS 157862, 2014 WL 5782769, at *2, *5 (D. Nev. Nov. 6, 2014). Long correspondences may also contain surreptitious messages containing information that could threaten prison security. [*Simpson v. Cnty. of Cape Girardeau,* 202 F. Supp. 3d 1062, 1069 (E.D. Mo. 2016)] ("[L]ogic dictates that scanning postcards is more efficient than opening envelopes and scanning multipage letters for information regarding other inmates or escape plans."). And even seemingly innocuous items like paperclips and staples can pose security risks and may easily be hidden in mail. *Human Rights Def. Ctr. v. Henderson Cnty.*, No. 4:20-CV-00159-JHM, 2022 U.S. Dist. LEXIS 194039, 2022 WL 14740236, at *7 (W.D. Ky. Oct. 25, 2022). Limiting incoming mail to postcards reduces the opportunities for bad actors to conceal dangerous items in mail.

*Id* at PageID.274-275.

Significantly, one of the cases cited by the Court was also affirmed by a published decision of the Eighth Circuit Court of Appeals. See *Simpson v. City of Cape Girardeau*, 879 F.3d 273, 281 (8th Cir. 2018), the leading case in this area that upheld a virtually identical postcard only policy. See also *Human Rights Def. Ctr. v. Union Cnty.*, 111 F.4th 931 (8th Cir. 2024)(finding postcard only policy did

not violate the First Amendment).  In addition, the Sixth Circuit has routinely upheld restrictions on inmates' mail when the intent was to eliminate security threats posed by contraband.  *Bethel v. Jenkins*, 988 F.3d 931, 939 (6th Cir. 2021); *see also Sheets v. Moore*, 97 F.3d 164, 168-69 (6th Cir. 1996).

"[A] prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Turner v Safley*, 482 U.S. 78, 95 (1987).  A reviewing Court must afford considerable deference to "the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). In determining whether a prison rule impinges on an inmate's constitutional rights, the Court must apply a four-factor standard:

1. There must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.

2. Whether there are alternative means of exercising the right that remain open to prison inmates.

3. The impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.

4. The absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.

See *Turner*, 482 U.S. at 89-90.  Here, the jail mail policy easily meets the *Turner* standard.

**1.  There is a 'valid, rational connection" between the jail mail policy and a legitimate penological objective**

The jail's articulated reasons for the postcard only policy—reducing the risk of contraband coming through the mail and reducing the time necessary to process incoming mail—are clearly legitimate penological objectives.  It is undisputed that contraband is a well-known and acknowledged problem in county jails.  See *Block v. Rutherford*, 468 U.S. 576, 588-89 (1984)("We can take judicial notice that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country.")  The mere risk of potential contraband coming through the mail is enough to support the postcard only policy for regular mail.  See *Simpson*, 879 F.3d at 280 ("Cape Girardeau may seek to prevent harm that has yet to occur and, as a result, is not required to provide evidence of previous incidents of contraband reaching inmates through the mail in order to adopt a postcard-only incoming mail regulation."); see also *Pesci v. Budz*, 935 F.3d 1159, 1168 (11th Cir. 2019)("specific evidence of a causal link between a . . . policy and actual incidents of violence" is not required (citation omitted)).   Here, the undisputed evidence shows that the jail had numerous documented instances of contraband or suspected contraband in the form of drugs coming through the mail.  Likewise, institutional efficiency is also a legitimate penological objective.  See

*Simpson*, 879 F.3d at 279 (observing that institutional efficiency is a legitimate penological objective); *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (concluding that "the defendants' economic interest in saving staff resources is legitimate").

The plaintiff in *Simpson* was the mother of an inmate who was claiming that the policy restricted her ability to communicate with her son. Like the St. Clair County Jail here, the reasons "for imposing the postcard-only policy were to reduce the risk of contraband entering the jail and to reduce the time that officers spent searching the mail." 879 F.3d. at 276. The Eighth Circuit found that the jail showed the requisite "valid, rational connection" as to the control of contraband:

> It is reasonable to believe that contraband could be smuggled into the jail via mail. Furthermore, it is a rational concept that limiting nonprivileged mail to postcards could reduce the risk of contraband being introduced into the jail through the mail. Accordingly, we find that Cape Girardeau's postcard-only policy is rationally connected to the legitimate penological objective of jail safety.

879 F.3d at 280. The Court likewise found the showing was also made as to the goal of reducing deputy time. *Id*. at 280.

Here, just as in *Simpson*, there is clearly a "valid rational connection" with the stated goal and the policy. In fact, it has resulted in a dramatic decline of illicit substances entering the jail and made it impossible for drugs to come into the facility through the mail. Thus, the first *Turner* standard is easily met.

## 2.  **The Remaining *Turner* Factors**

As to the second factor, the alternative means to exercise the right, the Eighth Circuit found there were adequate other means for communicating with her son because she could communicate by phone with her son, even though it cost $9.99 for ten minutes, and she could send an unlimited number of postcards.  *Id*. at 280-81.  Here, the alternative means of communication are greater because inmates also have the option of communicating with the tablet in addition to the phone, and the cost of the phone is 79% cheaper than in *Simpson*.  Moreover, the cost of a postage stamp was 60 cents, whereas an "electronic" stamp is 50 cents and a postcard stamp is only 44 cents.  At the same time, communication by an unlimited number of postcards is also still available as well as a free at-facility visit and an unlimited number of remote video visits.  An inmate is also still able to send a letter to those outside of the jail.  Thus, there are ample alternative means for Plaintiff to communicate with those outside of the jail.  See also *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003)(where a jail provides "alternative means" for family-inmate contact, those "visitation alternatives need not be ideal; they need only be available", finding that the ability to communicate by a letter and a telephone call, even if the telephone call is expensive, is sufficient to support the reasonableness of the jail policy).

The third *Turner* factor to consider is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the

allocation of prison resources generally" also favors the postcard only policy. Here, a return to regular mail would reintroduce contraband into the jail through the mail system, a potentially deadly event in a time of high mortality from Fentanyl. The Court in *Simpson* correctly addressed this issue:

> Requiring Cape Girardeau to abandon the postcard-only policy would force the jail to dedicate more time and resources to searching the mail, which would detract from the officers' other duties related to security and inmate welfare. Furthermore, returning to a letter mail policy would increase the risk that contraband would reach the inmates, creating a greater threat to institutional security. The threatened impact to Cape Girardeau's institutional efficiency and security is sufficient to convince us that returning to a letter mail policy would have a significant ripple effect on the inmates and jail staff. Therefore, we find that the third *Turner* factor weighs in favor of Cape Girardeau.

*Id.* at 281.

The final *Turner* factor, whether the regulation "is an 'exaggerated response' to prison concerns" or there are really no alternatives "that fully accommodate the prisoner's rights at de minimus cost to valid penological interests", also does not save Plaintiff's challenge. "*Turner* does not impose a least-restrictive alternative test but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." *Overton*, 539 US at 136 (citing *Turner*, 482 US at 90-91). In *Simpson*, the Court again correctly addressed this issue:

The risk of contraband entering the facility alone is more than a *de minimis* cost, and returning to a letter mail policy would force Cape Girardeau to incur that cost. Cape Girardeau must be able to protect inmates and staff from the security threats of contraband in the jail. As the jail officials are better positioned to understand the institutional security needs of Cape Girardeau County Jail, we defer to their judgment. Accordingly, we find that returning to a letter mail policy would have more than a *de minimis* cost to institutional security.

*Id.* at 282.

Thus, an analysis of the issues in this case shows that the St. Clair County Jail's new policy passes constitutional muster for the same reasons the policy in *Simpson* did so—an analysis of the four *Turner* factors favors the policy. In fact, as set forth above, the legality of the St. Clair County Jail policy is stronger given that it provides more available alternative means of communication for its inmates and pre-trial detainees. It is ironic that Plaintiff's attack is aimed at the jail making tablets available to its inmates, which is a feature most jails do not offer.

Finally, the United States Supreme Court has made clear that courts must defer to the judgment of the jail officials at the facility in question on these types of issues. See *Block*, 468 US at 588. As the Court stated in in *Block*:

When the District Court found that many factors counseled against contact visits, its inquiry should have ended. The court's further 'balancing' resulted in an impermissible substitution of its view on the proper administration of Central Jail for that of the experienced administrators of that facility. Here, as in *Wolfish* [*Bell v Wolfish*, 441 US 520 (1979)] '[it] is plain from [the] opinions that the lower courts simply disagreed with the judgment of [the jail] officials about the extent of the security interests affected and the means required to further those interests. 441 U.S. at 554.

18

468 US at 589; see also *Overton,* 539 U.S. at 132 ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them").  Here, jail officials made a judgment call, and the postcard only policy is "reasonably related to legitimate penological interests".  Thus, the Court should reject Plaintiffs' invitation for this Court to substitute its judgment for that of the jail officials.

### B. **Plaintiff's due process claim is meritless**

In Count II, Plaintiff claims that the County Defendants "refuse, return and/or destroy" mail that does not comply with the postcard only policy, had a policy or practice of not providing notice to the recipient when mail was "returned or destroyed" because it was not in the form of a postcard, and did not provide an opportunity for the intended recipient to appeal the decision (ECF No. 82, PageID.792).  Although this count is against all Defendants, there is no evidence that any of the named individual defendants were involved in the one mailing Plaintiff claims was sent to him and for which he was allegedly not given a mail rule violation.  Instead, this is a "policy" claim that must be premised against St. Clair County, not the individual defendants.  See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

First, the only mail Plaintiff claims was rejected under this policy is a personal letter from his aunt.  It was purportedly rejected not based upon its

content but because it was not in the form of a postcard.  If such a letter was rejected under jail policy, Plaintiff was to receive a copy of a mail rule violation—which numerous other inmates received during that time period when they had regular mail rejected based upon the form of the letter.[3]  Even if he did not, the inadvertent rejection of a single letter without notice to an inmate does not give rise to a constitutional claim.  *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (finding that an isolated incident of a prison official opening one piece of legal mail did not give rise to a constitutional claim); see also *Fox v. Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) (upholding denial of *Monell* claim when "[n]o evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible").

Second, even if a single rejected mail was actionable as a constitutional violation, the policy itself is constitutional.  In *Procunier*, the United States Supreme Court held that for a prisoner mail censorship regulation that rejected mail based upon the content of the mail, "an inmate must be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." 416 U.S. at 417–18.  The subsequent case of *Martin v. Kelley*,

---

[3] If a mail deputy failed to provide the notice, none of the defendants can be held liable for the actions of the deputy. *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 876 (6th Cir. 2024).

803 F.2d 236 (6th Cir. 1986), which again dealt with a mail censorship regulation, provided that "procedural safeguards [under *Martinez*] should . . . address the threat of the arbitrary suppression of speech," and, thus, "a mail censorship regulation must provide for an appeal of the rejection decision to an impartial third party prior to the letter being returned". *Id.* at 244-45; see also *ACLU Fund of Mich. v. Livingston County*, 796 F.3d 636, 648-649 (6th Cir. 2015)(finding a likelihood of success on the merits of a due process claim where a jail rejected legal mail on the basis that it was not legal mail and barred by the postcard only policy because the Court determined that the mail was in fact "legal mail").

As set forth above, the Jail's policy was changed in April 2023, so Plaintiff's claim appears to be limited to the time period of August 1, 2022 through the date of the change.  During that time period, the Jail's policy was that when mail was rejected because it was not in the form of a postcard, an inmate received a mail rule violation notice and had access to the grievance process to challenge that decision, just like he could challenge any other jail decision. [4]  There is no evidence that mail that did not comply with the postcard only policy was destroyed.

---

[4] To the extent Plaintiff seeks to raise a procedural due process claim based upon his aunt not receiving a meaningful opportunity to protest the decision to return the mail, this claim fails.  The *Procunier* decision "was premised on the fact that the First Amendment rights of *free citizens* were implicated by the censorship of prisoners' mail."  *Martin*, 803 F.2d at 244 (emphasis added).  Accordingly, "it is the author or publisher whom due process requires be given a meaningful opportunity to protest the censorship decision, not the inmate." *Holbrook v. Jellen*, No. 3:14-cv-00028, 2017 U.S. Dist. LEXIS 33890, at *61 (M.D. Pa. Mar. 8, 2017).

Moreover, *Procunier*, *Martin*, and *ACLU Fund of Mich. v. Livingston County* are distinguishable from the present case because those rejections were based upon the content of the mail, not the form of the mail. Courts have distinguished cases where mail is rejected based upon the content from those where the mail is rejected based upon the form. *See, e.g.*, *Witzke v. Bouchard*, No. 22-13070, 2023 U.S. Dist. LEXIS 101081, at **23-24 (E.D. Mich. June 9, 2023); *Bratcher v. Clark*, No. 1:17-cv-474, 2018 U.S. Dist. LEXIS 166939, at *15 (E.D. Vir. 2018) (no liberty interest at stake where there is no content-based censorship in the prison policy limiting inmate's rights to correspond with non-incarcerated individuals to three photocopied pages), vacated and remanded on other grounds, 770 F. App'x 105 (4th Cir. 2019) (finding claim moot following plaintiff's release from custody); *Nickarlos v. Kelley*, No. 5:18-CV-293-BSM-BD, 2021 U.S. Dist. LEXIS 92355, at *19 (E.D. Ark. Apr. 22, 2021) (finding that policy limiting incoming mail to three-pages "does not interfere with Mr. Banks's liberty interest in corresponding with individuals outside of prison because there is no content-based censorship.")

---

Because an inmate does not have standing to raise a procedural due process claim on behalf of the sender of mail, Plaintiff's claim should be rejected to the extent he raises such. *See Reynolds v. D.L. Young*, No. 5:20-cv-00753, 2023 U.S. Dist. LEXIS 55176, at *12-13 (S.D. W. Va. Mar. 30, 2023) ("Furthermore, although senders are also entitled to rejection notices, Mr. Reynolds lacks standing to raise claims on their behalf."); *Walker v. Calderon*, No. C95-2770 FM, 1997 U.S. Dist. LEXIS 24802, at **13-14 (N.D. Cal. Oct. 31, 1997)("In addition, plaintiff lacks standing to raise a due process claim for vendors of his withheld mail.").

In such a case, the only procedure required to the inmate is a notice, which is what the Jail's August 2022 to April 2023 policy required. *Thomas v. Clear*, No. 7:20-cv-00584, 2021 U.S. Dist. LEXIS 178725, at **23-24 (W.D. Va. Sept. 20, 2021) (due process does not require that an inmate be given a reason why his mail was rejected). Thus, Plaintiff does not have a valid due process claim against St. Clair County.

## C. **Plaintiff does not have a valid First Amendment retaliation claim**

Plaintiff alleges that he was retaliated against for filing grievances and filing the present lawsuit. According to Plaintiff this retaliation took the form of interference with the present lawsuit (by not quickly copying grievances for him and not giving him the first names of the named defendants), sending him a bill for his incarceration in the amount of $60 per day for his jail stay, and sending his bill to a collection agency when he did not pay the bill (ECF No. 82, PageID.785-787).

This claim is meritless and at a minimum barred by qualified immunity. Moreover, Plaintiff's complaint makes no effort to distinguish between each of the individual defendants on any of the counts raised in the Complaint, and, although he also names the County and the Sheriff in his official capacity, there is no *respondeat superior* liability under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

A prima facie case for First Amendment retaliation involves three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant

took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two—that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(en banc); see also *Nieves v. Bartlett*, 587 U.S. 391 (2019).

First, as to the collection effort, this was undertaken by Inmate Billing Clerk Karen Roy, not any of the other individual defendants, and there is no evidence any of the three individual defendants had any role in the decision. Section 1983 bars plaintiffs from holding one official liable for another's actions, so plaintiffs must show that each sued official engaged in unlawful conduct. *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 876 (6th Cir. 2024). Moreover, Plaintiff cannot show that there is a causal connection between his grievances or the lawsuit and Ms. Roy's collection activities. In fact, the collection efforts taken against Plaintiff were the same efforts taken against all other inmates—in fact, Ms. Roy testified that was her normal practice as to all sentences—and the documentary evidence shows that Plaintiff's outstanding inmate billing debt was sent to collections at the same time as she sent 68 other inmate files. Finally, the County had the right to bill an inmate $60 per day for the cost of inmate housing and seek reimbursement for that expense. See MCL 801.83(1); *Dickson v. Credit Bureau of Greater Lansing*, No. 1:95-CV-169, 1996 U.S. Dist. LEXIS 9356, at **6-7 (W.D.

24

Mich. June 14, 1996); *LaPine v. Savoie*, No. 2:14-cv-145, 2014 U.S. Dist. LEXIS 151924, at **39-40 (W.D. Mich. Oct. 27, 2014).  Where a party pursues their own legal rights, the Plaintiff must allege that the action not only had a retaliatory motive but also that it was lacking a reasonable basis in law or in fact. See e.g., *Berrada v. Cohen*, 792 F. App'x 158, 164 (3d Cir. 2019) (denying motion to amend to allege a retaliation claim because plaintiff could not prove the legal action taken by defendant was "baseless"); *Morrissey v. CCS Servs., PLLC*, No. 19-cv-13027, 2020 U.S. Dist. LEXIS 182949, at *8 (E.D. Mich. Oct. 2, 2020) ("[N]o court in this Circuit has determined a retaliation claim against an employer filing counterclaims satisfied the prima facie showing without a sufficient factual allegation of bad faith, baselessness, or frivolousness . . . .").  Here, there was a reasonable basis in fact or law for pursuing the debt.  Thus, the retaliation claim based upon the collection efforts fails for multiple reasons.

Second, as to the claim that Plaintiff was retaliated against by interference with his lawsuit, he again does not specify who did what to him, did not identify how any of the alleged actions interfered with his lawsuit or how they were "likely to chill a person of ordinary firmness" from engaging in the protected conduct, and did not offer any evidence that the grievances or lawsuit were a "but for cause" of the alleged actions of the jail officials.  Notably, while he was incarcerated, he first claimed that jail officials somehow interfered with his efforts to obtain a form complaint from the federal court because ten days had passed from the time he

gave mail to a deputy requesting a copy of the form (see Ex. 15, p. 30-31); however, when the form arrived in the mail the next morning, he apologized for the false accusation against jail officials (see Ex. 28).  In addition, when Plaintiff requested assistance with access to the E.D. Mich Local Rules, Lt. Olejnik made them available to Plaintiff (see e.g., Ex. 15, p. 15-16),

On each occasion that Plaintiff requested copies of his grievances, not only did he have them available on his tablet, but the jail Lieutenants also directed him to receive such copies once the grievances were final, even after the lawsuit was served on Defendants (see, e.g., Ex. 25; Ex. 15, p. 5).  The fact that there was a delay of a few days from the time of his request is immaterial and not an adverse action.  See e.g., *Smith v. Yarrow*, 78 Fed. App'x 529, 540 (6th Cir. 2003) ("certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations . . . ."); *Meeks v. Schofield*, 625 Fed. App'x 697, 701-02 (6th Cir. 2015) (defendants' searches of the prisoner's work-station or denial of access to the library on one occasion were de minimis conduct that did not constitute adverse action).

As for the claim that Plaintiff was not provided the first names of the individual defendants (only the first initial and last name)(see Ex. 21), Lt. Adams responded, "legal court-ordered requests shall be processed through the department's corporation counsel" and provided the name and address of the

corporation counsel (Id).  This is not an adverse action, and there is nothing wrong with directing a court order to legal counsel to handle.

Moreover, the issue did not cause the service of the summons and complaint to be held up in any way.  Thus, not only does this not constitute an adverse action "likely to chill a person of ordinary firmness" from pursuing a lawsuit; it did not in fact do so, and there is no evidence that this was retaliatory.  See also *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)("In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury . . . . Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."); *Jackson v. Gill*, 92 Fed. App'x 171, 173 (6th Cir. 2004)("Because Jackson failed to allege any actual prejudice to protected litigation, Jackson has no access to the courts claim.").  Thus, the retaliation claim must also be dismissed.

### D. Each individual defendant is entitled to qualified immunity

Here, Plaintiff's First Amended Complaint also names the individual defendants in the First Amendment and Due Process claims.  As this Court is aware, prison officials are entitled to qualified immunity when performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner*, 119 F.3d at 429. An "objective reasonableness" test is used to determine

27

whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Because there is not sufficient case law to establish that a jail cannot go to a postcard only policy on these facts, Defendants Lt. Olejnik and Lt. Adams, as well as Sheriff King in his personal capacity, are entitled to qualified immunity.

### E. The Declaratory Relief Claim

Plaintiff's claim for declaratory relief is moot for the same reason this Court found that his claim for injunctive relief was moot, and, thus, it must also be dismissed on those grounds. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) ("For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)); *Small v. Brock*, 963 F.3d 539, 547 (6th Cir. 2020) (holding that, in the absence of a real and immediate threat that the action will occur in the future, a plaintiff lacks standing to pursue to declaratory relief); *see also Bratcher v. Clark*, 770 F. App'x 105 (4th Cir. 2019) (finding claim for injunctive and declaratory

relief based upon jail's mail policy moot following plaintiff's release from custody).

**F.** **The Conspiracy Claim**

Finally, Plaintiff has no evidence that the County Defendants conspired with Securus to implement the postcard only policy to force individuals to use the pay features on the tablet (Olejnik dep., pp. 284-287).  In fact, there is no evidence the parties even discussed the issue, and implementing a postcard only policy did not increase revenues for the County or Securus.  See also ECF No. 105.

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorneys for Defendants King,
Olejnik, Adams, and St. Clair County
By:  /s/ Todd J. Shoudy
1411 Third Street, Suite F
Port Huron, Michigan  48060
(810) 987-8444
Michigan Bar #41895

DATED: March 7, 2025        tshoudy@fletcherfealko.com

The undersigned certifies that a copy of the foregoing instrument was served upon all attorneys of record on March 7, 2025, by e-filing.
/s/ Theresa A. Messing
Fletcher Fealko Shoudy & Francis, P.C.
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tmessing@fletcherfealko.com

29

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TAUREAN PROCH, individually and on behalf of a class of similarly situated persons,<br>　　　　Plaintiff(s),<br><br>v.<br><br>SHERIFF MAT KING, LIEUTENANT RICHARD OLEJNIK, LIEUTENANT KYLE ADAMS, ST. CLAIR COUNTY, MICHIGAN and SECURUS TECHNOLOGIES, INC.,<br>　　　　Defendant(s). | Case No. 22-12141<br>Honorable Laurie J. Michelson |

## BRIEF FORMAT CERTIFICATION FORM

I, Todd J. Shoudy, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

　　　　　　　　　　　　　　　　/s/ Todd. J. Shoudy
　　　　　　　　　　　　　　　　Dated: March 7, 2025