UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAUREAN PROCH, individually and
on behalf of a class of similarly
situated persons,

        Plaintiff,

vs.

SHERIFF MAT KING,
LIEUTENANT RICHARD OLEJNIK,
LIEUTENANT KYLE ADAMS,
ST. CLAIR COUNTY, MICHIGAN and
SECURUS TECHNOLOGIES, INC.,

        Defendants.

Case No. 22-12141

Hon. Laurie J. Michelson
Magistrate Judge:
Hon. Patricia T. Morris

_____

IAN T. CROSS (P83367)
Margolis & Cross
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
ian@lawinannarbor.com


TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendants King, Olejnik,
Adams and St. Clair County, only
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

SHELBY LEIGHTON
JACQUELINE ARANDA OSORNO
Public Justice
Counsel for Plaintiff
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 221-8495
sleighton@publicjustice.net
jaosorno@publicjustice.net


COLLEEN SMERYAGE
Freedman Normand Friedland and LLP
Attorney for Defendant Securus
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(305) 924-2900 / Fax (646) 392-8842
csmeryage@fnf.law

RHONDA R. STOWERS (P64083)
Plunkett Cooney
Attorney for Defendant Securus
111 E. Court Street, Suite 1B
Flint, MI 48502
(810) 342-7014
rstowers@plunkettcooney.com
_____

**DEFENDANTS KING, OLEJNIK, ADAMS AND ST. CLAIR COUNTY'S
REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT  (ECF NO. 117)**

NOW COMES Defendants King, Olejnik, Adams and St. Clair County (hereinafter "County Defendants") by and through their attorneys, Fletcher Fealko Shoudy & Francis, P.C., and files their Reply to Plaintiff's Brief in Opposition (ECF No. 129) to Defendants' Motions for Summary Judgment (ECF No. 117).

### I.     The Post Card Only Policy Does Not Violate The First Amendment

In his response brief, Plaintiff argues that the County did not really have a problem with contraband coming through the mail, and, because it receives revenue from the use of the pay features on the Securus tablet, the motive behind the post card only policy must have been financial instead of an increase in jail security.  The problem is there is no evidence to support this claim, and the undisputed evidence shows the exact opposite.

The only contemporaneous written documentation of the reason for the implementation of the post card only policy for incoming general mail is an email

1

dated August 23, 2021, approximately one year before the implementation of the policy, where jail officials discussed "ongoing allegations recently that more and more drugs are entering the facility through the mail" and identifying a recent jail mail that "tested positive for synthetic cannabinoids" (ECF No. 117-12, PageID.2137).  The Jail Lieutenant specifically stated, "Our past conversation was to switch to post cards, make a photo, then provide that copy to the inmate. We discussed this last year, but decided to wait until the switch to Securus tablets were complete so there is plenty of opportunity to receive mail/photos via tablet" (Id at PageID.2137-2138).  Every jail official's testimony as to the reasons for the post card only policy has always been 100% consistent with this email.

Plaintiff claims that "[i]n the years before the adoption of the mail policy, there were no confirmed incidents of drugs being introduced through the mail, and relatively few incidents of contraband in general" (ECF No. 129, PageID.3540). This statement ignores the confirmed case referenced in the August 23, 2021, email and the numerous cases cited in the Sergeant Pass On Logs (ECF No. 117-11).

Plaintiff's main argument seems to be that the Jail's legitimate penological reasons for the policy cannot be based upon "suspected" contraband coming through the mail and, instead, the Jail officials have to be able to prove conclusively that the Jail had drugs coming through the mail and show documented printouts of lab test results.  As Defendants pointed out in their initial brief, that is not the

standard under *Turner*.  See ECF No. 117, PageID.1183-85 and cases cited therein,

e.g., *Simpson v. City of Cape Girardeau*, 879 F.3d 273, 280 (8th Cir. 2018) ("Cape

Girardeau may seek to prevent harm that has yet to occur and, as a result, is not

required to provide evidence of previous incidents of contraband reaching inmates

through the mail in order to adopt a postcard-only incoming mail regulation."), and

*Pesci v. Budz*, 935 F.3d 1159, 1168 (11th Cir. 2019)("specific evidence of a causal

link between a . . . policy and actual incidents of violence" is not required (citation

omitted)).

Here, there was ample evidence of concerns about contraband coming into the

Jail through mail to support Defendants' articulated reason for the post card only

policy[1].  Although Plaintiff also claims that increasing jail revenue through the use

of Securus tablets was the motive, there is no evidence to support that claim;

moreover, a post card only policy does not and did not in fact increase revenue from

the use of tablets (see ECF No. 117, PageID.1177, ¶14)

Plaintiff also relies on the case of *Prison Legal News v Columbia County*, 942

F. Supp. 2d 1068 (D. Or. 2013) to support the claim that there is no connection

between a postcard policy and an increase in jail security.  However, the sheriff of

---

[1] Plaintiff also asserts that changing to a post card only policy saves at most 30
seconds per piece of mail.  However, even if it only saves 30 seconds per piece of
mail, if each inmate receives 1 piece of mail per week, that would result in a savings
of several hours of correction officer time per week, which is not *de mininmis*.

the jail in Columbia County testified that the Jail did not have a problem with contraband arriving in the mail.  *Id* at 1075.  That is far different than that experienced by the St. Clair County Jail.  Plaintiffs further rely on *Columbia County* in their assertion that the post-card only policy "inhibits rehabilitation."  However, the Court went on to conclude that while the "postcard-only policy limits an important avenue of communication" there are other alternative avenues of communication available.  Here, that is clearly the case.

Moreover, Plaintiff disingenuously claims that the alternative means of communication are "illusory, impractical or otherwise unavailable"; however, ignores that Plaintiff (1) still could receive post cards for free; (2) still could do an onsite video visit once per week for free; and (3) in a six month period made 850 phone calls totaling almost 5,000 minutes, was a prolific user of the video, email, and photograph features of the tablet, and still had plenty of money to rent movies, play video games, and purchase subscriptions (PageID.1177-1178).  The fact that there is a cost to some of these features does not make them unavailable.  See *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003)("alternatives . . . need not be ideal, however; they need only be available", recognizing a telephone call, even if it is expensive, is sufficient under *Turner*).

As to the remaining *Turner* factors, Plaintiff also misses the mark—a return to the old policy would re-introduce the possibility of mail being a source of

4

contraband again, a serious issue, and the alternatives Plaintiff's propose, a mail scanner machine does not impose a "de minimis cost", as those machines cost approximately $125,000 and have limited effectiveness (ECF No. 117-12, PageID.2137).

## II.    **Plaintiff Was Not Denied Due Process**

In his response brief, Plaintiff claims that the jail mail policy "does not require that deputies issue a mail violation form when mail violates the postcard-only policy" (ECF No. 129, PageID.3550).    That claim is specious.    As Plaintiff recognizes, jail mail deputies were required to issue a mail violation notice when mail was rejected (ECF No. 117-2), had a policy that required that it be documented (ECF No. 117-7), created a standardized form for that purpose (ECF No. 117-17), in the policy, listed that as the proper form to be used (ECF No. 117-7, PageID.1772)("Forms:  Mail Violation Form"), and the jail routinely used that form to notify inmates of mail being rejected (ECF No. 117-19, 117-20)[2].

Plaintiff also claims that Plaintiff not receiving such a notice for mail allegedly sent to him proves the policy does not exist even though numerous such forms were

---

[2] Plaintiff also speciously claims that Lt. Oljenik's testimony contradicts his Affidavit (ECF No. 129, PageID.3551).  Lt. Oljenik testified that "staff were instructed and should have completed a mail rule violation anytime mail was returned to sender", but, of course, since he does not personally monitor each piece of mail being processed, he honestly admitted he could not confirm compliance with the policy in 100% of the cases (ECF No. 117-4, PageID.1611).

5

sent to others (ECF No. 117-19), and when he reviewed the issue while at the jail, numerous others provided such copies to him (ECF No. 117-20).[3]  This evidence establishes that a jail mail policy on a single occasion or two, assuming Plaintiff can prove mail was actually sent from his aunt and his brother, was not followed, which is not enough to establish a *Monell* claim (see ECF No. 117, PageID.1190 and cases cited therein) and he is not claiming any of the individual defendants was the person who processed the alleged mail in question.

Finally, Plaintiff was not entitled to due process on mail rejected based upon the form of the mail as opposed to the content regardless.  Defendants in their initial brief explained that the reliance on "*Procunier*, *Martin,* and *ACLU Fund of Mich. v. Livingston Cnty.*" was misplaced, as they "are distinguishable from the present case because those rejections were based upon the content of the mail, not the form of the mail." (ECF No. 117, PageID.1192).  In support of that argument, Defendants cited three district court cases, including a recent Eastern District Court case, and a Fourth Circuit case (Id), which stand for the principle that where mail is rejected based upon

---

[3] Plaintiff also submits two declarations, one from his aunt and one from his brother saying that each sent him mail (ECF No. 129-24, 129-25).  However, neither witness was listed on Plaintiff's witness list (see Exhibit A attached hereto), and the claimed letters were not disclosed in Plaintiff's answers to interrogatories where he was requested to identify this information (see Exhibit B).  After Plaintiff's deposition was already taken, he provided initial disclosures on June 19, 2024, and listed both individuals, but then submitted a preliminary witness list on August 30, 2024, which dropped both individuals as witnesses who could be called at trial (Ex. B).  Thus, neither can be called at the time of trial.  LR 16.2(b)(8).

form, instead of content, there is no interference with a prisoner's liberty interest in communicating with those outside of the jail. In response, Plaintiff argues that *ACLU Fund of Mich v. Livingston Cnty.*, 796 F.3d 636, 639-40 (6th Cir. 2015) controls because it involved a post card only policy. However, what Plaintiff fails to recognize is that although *Livingston Cnty.* involved a post card only policy, it was based upon a determination of whether the incoming mail was legal mail and, thus, was content based. The same is true for *Landford v. Kienitz*, No. 2:2-cv-00152, 24 U.S. Dist. LEXIS 239495 (W.D. Mich. Oct. 25, 2024), cited by Plaintiff. *Human Rights Def. Ctr. v. Bezotte*, No. 11-CV-13460, 2017 U.S. Dist. LEXIS 48812 (E.D. Mich. Mar. 31, 2017), also cited by Plaintiff, was a claim that mail "was censored without due process". This lawsuit is not a claim based upon a denial of legal mail or a claim that his mail had been otherwise censored based upon content. Thus, Plaintiff had no liberty interest requiring due process in this case.

### III.   <u>Plaintiff Does Not Have a Valid First Amendment Retaliation Claim</u>

In his response brief, Plaintiff primarily relies upon the alleged threat to sue him as the "adverse action" supporting his First Amendment Retaliation claim. When Karen Roy attempted to collect the cost of housing Plaintiff after the lawsuit was already filed, something the County had the right to do under MCL 810.83 and does as to all sentences at the Jail, Plaintiff objected and took the position that the County had to "stop all communication with me and this address about this debt" (ECF No.

117-23, PageID.2436).   Ms. Roy explained that the county had a legal right to recover the cost of the housing, that the County was not subject to the fair debt collection statutes, that the County had the right to file a lawsuit to recover this amount, and then asked "[please advise whether such a suit will be necessary" (PageID.2438), which Plaintiff claims was a retaliatory threat.

First, Plaintiff claims that Defendants never addressed this in their Initial Brief, citing to page 23 of the Brief.   However, Plaintiff ignores that the underlying factual issues and the retaliation claim as to these collection efforts were in fact addressed at pages 10-11, and 24-25 of the Brief (ECF No. 117, PageID.1180-1182 and 1194-1195).   As Defendants pointed out, Karen Roy is not a defendant, there is no respondeat superior liability, and there is no evidence other than pure speculation by Plaintiff's Counsel that any of the named Defendants were involved in the collection efforts.   In fact, Plaintiff cannot even establish that the Sheriff knew about the letter before it went out.   Plaintiff disingenuously claims that this is really a *Monell* claim, an official policy claim, but offers no basis for such an allegation (one not raised in the lawsuit)—in fact, the letter to Plaintiff was only issued to him and not others because he objected to the collection efforts, erroneously claimed it was unlawful, and directed the County to stop communicating with him.

Moreover, as Defendants pointed out in their Initial Brief, the County had a legal right to pursue these collection efforts, and the question regarding the lawsuit

was in response to Plaintiff's letter where he insisted that the Jail stop communicating with him and stop trying to collect the debt[4]. Under these circumstances, even if there were respondeat superior liability and the letter is somehow interpreted as a retaliatory threat, Plaintiff cannot meet his burden of establishing that raising a possible legal action with Plaintiff—one that was never filed against Plaintiff but was filed against other former inmates—had no basis in law or in fact. Thus, the retaliation claim must be dismissed.

## IV.   **Defendants Are Entitled to Qualified Immunity**

Plaintiff claims that Defendants Olejnik and Adams, because they made the initial draft of the policy and allegedly did not come in after hours to train deputies on the policy (also a claim not raised in the lawsuit), are personally liable for the First Amendment and due process claims and not entitled to qualified immunity. Plaintiff also claims that the Sheriff is liable for the letter to Plaintiff and likewise not entitled to qualified immunity. As set forth above, there are numerous cases that have upheld a post card only policy and rejected a due process claim where mail is rejected based upon form. There is also no case law that says it is illegal to raise the prospect of a lawsuit when you have a legal right to file such a claim. Thus, none of the individual Defendants were put on notice sufficient that they would have known

---

[4] Plaintiff claims that at the time of the letter from Ms. Roy, he had not been given ninety days like other inmates. Plaintiff is the only one who sent such a letter and he was not sent to collections until more than 90 days had passed, like all others.

that their conduct would violate any of Plaintiff's clearly established rights.  Thus, each is entitled to qualified immunity.

## V.    Plaintiff's Claims for Injunctive and Declaratory Relief Are Moot

Plaintiff claims this lawsuit is not moot because he hopes to obtain class certification and the claim is capable of repetition, yet evading review—claims already rejected by this Court (see ECF No. 55, 63).  Plaintiff claims that he should still be able to raise claims on behalf of the other class members, citing to *Gerstein v. Phgh*, 420 U.S. 103 (1975).  The problem with this argument is in this case, unlike *Gerstein*, no class has been certified.  Thus, the narrow exception in *Gerstein* does not apply.

## CONCLUSION

Based upon the foregoing arguments and authorities, Defendants request that the Court grant them summary judgment on all claims.

> LETCHER FEALKO
> SHOUDY & FRANCIS, P.C.
> Attorneys for Defendants King, Olejnik,
> Adams and St. Clair County, only
> By:  /s/ Todd J. Shoudy
> 1411 Third Street, Suite F
> Port Huron, Michigan  48060
> (810) 987-8444
> Michigan Bar #41895

DATED:  April 18, 2025        tshoudy@fletcherfealko.com

10

The undersigned certifies that a copy of the
foregoing instrument was served upon attorneys
for Plaintiff on April 18, 2025 by electronically
filing this document using the Court's ECF system.

/s/ Theresa A. Messing
Fletcher Fealko Shoudy & Francis, P.C.
1411 Third Street Suite F
Port Huron, Michigan 48060
(810) 987-8444
tmessing@fletcherfealko.com

11

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TAUREAN PROCH, individually and
on behalf of a class of similarly situated
persons,

        *Plaintiff*,

    v.

SHERIFF MAT KING,
LIEUTENANT RICHARD OLEJNIK,
LIEUTENANT KYLE ADAMS,
ST. CLAIR COUNTY, MICHIGAN,
SECURUS TECHNOLOGIES, LLC,

        *Defendants*.

Case No. 2:22-cv-12141

Judge: Laurie J. Michelson
Mag. Judge Patricia T. Morris

## PLAINTIFF'S PRELIMINARY WITNESS LIST

Plaintiff Taurean Proch is prepared at this time to list the individuals listed below as proposed witnesses. Mr. Proch reserves the right to amend and/or supplement this list after the close of discovery.

1. Plaintiff Taurean Proch;

2. Dr. Dora Schriro (expert);

3. Brianna Griffin;

4. Defendant Mat King;

5. Defendant Richard Olejnik;

6. Defendant Kyle Adams;

1

7.  A corporate representative of Defendant Securus Technologies;

8.  A corporate representative of St. Clair County, Michigan;

9.  Tracy DeCaussin;

10. Karen Roy;

11. Any and all fact or expert witnesses listed on any Defendant's witness list;

12. Any and all witnesses necessary to establish class certification or class liability and damages, to be disclosed after class discovery;

13. Any additional experts necessary to rebut or refute the testimony of experts identified by Defendants;

14. Any and all witnesses necessary to identify or authenticate any document or record;

15. Any rebuttal witnesses.

Date: August 30, 2024                    Respectfully submitted,

*/s/ Shelby Leighton*
Shelby Leighton
Jaqueline Aranda Osorno
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net
jaosorno@publicjustice.net

Philip L. Ellison
OUTSIDE LEGAL COUNSEL, PLC
PO Box 107
Hemlock, MI 48626

2

(989) 642-0055
pellison@olcplc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Dated: August 30, 2024                    */s/ Shelby Leighton*
                                          Jaqueline Aranda Osorno

                                          *Counsel for Plaintiff*

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Taurean Proch
    Plaintiff,

    v.                 Case No. 22-12141

Mat King, et al.,
    Defendant (s).
                  /

PLAINTIFF'S ANSWERS TO SHERIFF MAT KING, SERGEANT D.
FLEMING, LIEUTENANT R. OLEJNIK, AND LIEUTENANT
K. ADAMS' FIRST SET OF INTERROGATORIES

    COMES NOW the Plaintiff, TAUREAN PROCH, in a pro se
capacity, and gives notice to all parties that the aforementioned
answers are attached hereto.

April 12th, 2023

Taurean Proch
7487 Swan Creek Rd.
Fair Haven, MI 48023

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing and attached was
served on all parties of record on April 12th, 2023 via U.S. Mail.

Taurean Proch
7487 Swan Creek Rd.
Fair Haven, MI 48023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAUREAN PROCH,

        Plaintiff,

vs.

SHERIFF MAT KING, SERGEANT
D. FLEMING, LIEUTENANT R. OLEJNIK,
LIEUTENANT K. ADAMS, and
SECURUS TECHNOLOGIES, INC.,

        Defendants.

Case No. 22-12141

Hon. Laurie J. Michelson
Magistrate Judge:
Hon. Patricia T. Morris

TAUREAN PROCH
Pro Per Plaintiff
7487 Swan Creek Rd.
Fair Haven, MI 48023
(734) 855-5789
taureanproch@gmail.com

RHONDA R. STOWERS (P64083)
Plunkett Cooney
Attorney for Defendant Securus
111 E. Court Street, Suite 1B
Flint, MI 48502
(810) 342-7014
rstowers@plunkettcooney.com

TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendants King, Fleming,
Olejnik and Adams only
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

**DEFENDANTS SHERIFF MAT KING, SERGEANT D. FLEMING,
LIEUTENANT R. OLEJNIK, AND LIEUTENANT K. ADAMS'
FIRST SET OF INTERROGATORIES TO PLAINTIFF TAUREAN PROCH**

NOW COME Defendants Sheriff Mat King, Sergeant Donald Fleming, Lieutenant Richard Olejnik and Lieutenant Kyle Adams, (hereinafter referred to as "Defendants"), by their attorneys, Fletcher Fealko Shoudy & Francis, P.C. and hereby submit their First Set of Interrogatories to Plaintiff Taurean Proch.

## **CONVENTIONS**

"Describe in detail" means describe fully by reference to underlying facts, rather than by reference to ultimate facts or conclusions of fact or law, provide full information with respect to time, place, and manner, provide all applicable information required by the word "identify", and provide a precise calculation of all numerical information requested.

"Defendants" shall mean Sheriff Mat King, Sergeant D. Fleming, Lieutenant R. Olejnik, and Lieutenant K. Adams, and their employees, agents, and representatives.

"Documents" shall mean, without limitation, all written, reported, recorded, or graphic matter however produced or reproduced, now or at any time in your possession, custody, or control, including, but not limited to, all letters, correspondence, telegrams, photographs, drawings, records (tape, disc or other) of any communication, statements, invoices, purchase orders, records of hearings, reports of decisions of state or federal governmental agencies, telegrams, summaries or records of telephone conversations, summaries or records of personal interviews, graphs, reports, notebooks, note charts, plans, sketches, maps, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of consultants, motion picture film(s), brochure(s), pamphlet(s), advertisement(s), circular(s), press releases, marginal comments appearing on any document, microfilm, microfiche, computer printouts, programs, tapes, cassettes, disks, magnetic drums, and punch cards, all data stored in computer databases or banks, newsletters, articles, newspaper clippings, instructions, reports, calendar or diary entries, schedules, memoranda, analyses, statistical data, agreements, notes, contracts, leases, intra- and inter-corporate drafts of the foregoing items, all

2

nonidentical copies or reproductions of the foregoing (including copies or reproductions upon which notations have been made which do not appear on the originals), and all other writings of any kind.

"Identify" means:

a. as applied to a natural person, to make known the name, position, employer and present address of such person, if however such information is not known, state the last known address, and employer of such person or persons;

b. as applied to documents, state the type of document, to make known the name of the author or authors, the date of the documents, each person to whom the document is addressed, and the name and address of each person having present custody of the original or any copy or reproduction of the document; and

c. as applied to an act, provide the date and place of the act, name the person acting, the person for whom the act was performed, and the person against whom the act was directed, and describe the act in detail.

"Person" or "persons" means all natural and legal persons, including but not limited to individuals, associations, partnerships, corporations and representatives.

The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "including" means "including without limitation"; and "he" or any other masculine pronoun includes any individual regardless of sex.

## INTERROGATORIES

## INTERROGATORY NO. 1

1. Please provide the name of any educational correspondence course, if any, you attempted to participate in while incarcerated at the St. Clair County Jail.

**ANSWER TO INTERROGATORY NO. 1:** I wanted to pay for a correspondence course through ISSA (International Sports Sciences Association) and Blackstone Career Institute. Both which were prohibited by the postcard only policy.

3

## INTERROGATORY NO. 2

2. Please provide the name of any family member, if any, that had legal research materials that he or she desired to provide to you while you were incarcerated at the St. Clair County Jail.

## ANSWER TO INTERROGATORY NO. 2:

Brianna Griffin, and I also wanted to employ a third-party researcher whom I was unable to due to the 1st Amendment restriction banning meaningful correspondence.

## INTERROGATORY NO. 3

3. Please provide the name of any community outreach program you sent correspondence to, if any, for which you were seeking a response, while you were incarcerated at the St. Clair County Jail.

## ANSWER TO INTERROGATORY NO. 3:

I had several I wished to correspond with. However, the restriction of my First Amendment prohibited me from writing them because I knew I could only receive postcards per policy.

## INTERROGATORY NO. 4

4. Please provide the complete description of any legal documents that were at your home that you needed to sign while you were incarcerated at the St. Clair County Jail.

## ANSWER TO INTERROGATORY NO. 4:

1) Tax documents
2) household expense reports/bills
3) Investment documents
4) business papers for my company (TJR Collective)
5) my manuscripts... among other documents

## INTERROGATORY NO. 5

5. Please state the name and age of each of your children. For each child, please state whether you received electronically, in post card form, or any other form, any photograph of said children while you were incarcerated at the St. Clair County Jail.

## ANSWER TO INTERROGATORY NO. 5:

Malena 11, Athena 3, Cassius 2

I did receive pictures on the electronic tablet, for which I never received printed forms upon my release and the photos were priced considerably higher than US mail (making photos not an option for my lower income friends and family).

## INTERROGATORY NO. 6

6. Please state what family members have neither a computer with internet access nor a smartphone, or access to one, who desired to communicate with you but could not, while you were incarcerated at the St. Clair County Jail.

## ANSWER TO INTERROGATORY NO. 6:

All of my nieces and nephews who are children of my brother (Justin Proch). Also, my younger brother Royal Proch. This response does not limit any new information I may receive at a later date of additional person(s) who advise me that they were unable to write to me because of the policy.

## INTERROGATORY NO. 7

7. Please identify any mail that you claim was sent to you and was not delivered to you or was destroyed by the jail. For any such mail, identify the name of the sender, and the format of the mail that was allegedly sent and not delivered to you or destroyed (indicating which occurred, it was

I have several people who sent me mail that was never returned and which I never received. I am still investigating this and can only get a better determination via my discovery requests to defendants.

5

not delivered to you, it was returned to the sender, or it was destroyed, or
any of the three).

**ANSWER TO INTERROGATORY NO. 7**:

I am unable to answer this completely, because this matter is still being investigated by myself. However, I do know, as of now, that

**INTERROGATORY NO. 8**

8. Identify the name of the SCC Jail official referenced in paragraph 20 of
   your complaint, who you indicated "Plaintiff declines to name until a later
   stage in the proceedings".

**ANSWER TO INTERROGATORY NO. 8**:

Sgt. Branch

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorneys for Defendants King, Fleming,
Olejnik and Adams only

By: /s/ Todd J. Shoudy
      TODD J. SHOUDY (41895)
1411 Third Street, Suite F
Port Huron, Michigan  48060
(810) 987-8444
Michigan Bar #41895
tshoudy@fletcherfealko.com

DATED: February 2, 2023

6

The undersigned certifies that a copy of the foregoing instrument was served upon all attorneys/parties of record on February 3, 2023 by U.S. first-class mail.

/s/ Denise D. McClure
Denise D. McClure
Fletcher Fealko Shoudy & Francis, P.C.
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
dmcclure@fletcherfealko.com